## THE LENORA STATE BANK v. J. S. PEAK.
### NO. 92.

1. HOMESTEAD—*Actual or Constructive Occupancy Necessary.* To give the homestead character to a tract of land, it must be occupied as a residence, either actual or constructive, by the family of the owner. When there is not actual occupancy, the acts of the homestead claimant must be consistent with his declared intentions, and actual occupancy must follow within a reasonable time.

2. —————— *Judgment Lien not Affected by Subsequent Acts.* If a tract of land is not the homestead of a judgment debtor at the time the judgment is rendered, the lien of the judgment attaches thereto, and is unaffected by any subsequent acts of the owner in establishing his residence thereon.

3. —————— *How Selection from a Larger Grant Must Be Made.* When the owner and his family occupy as a residence a body of farming land greater than is exempt as a homestead, the selection of the homestead must include the dwelling-house and such other land as is contiguous thereto. Such selection cannot be made of 160 acres which are entirely separated from the legal subdivision of land upon which the dwelling-house is situated, even though the intervening land belongs to the same owner.

MEMORANDUM.— Error from Norton district court; A. C. T. GEIGER, judge.   Action by The Lenora State Bank against J. S. Peak.   Motion by defendant to set aside a sale of lands on execution because exempt. Granted.   Plaintiff brings the case to this court.   Reversed.   The opinion herein, filed May 5, 1896, states the material facts.

*John R. Hamilton*, and *L. H. Wilder*, for plaintiff in error.

*L. H. Thompson*, for defendant in error.

The opinion of the court was delivered by

GARVER, J.: On a judgment rendered September 28, 1892, in the district court of Norton county, in favor of the Lenora State Bank against J. S. Peak, an execution was issued January 9, 1894, and certain lands of the defendant levied upon and sold, among them being a tract of 160 acres which the defendant claimed to be exempt as his homestead. On his motion, the sale, as to this tract, was set aside, on the ground that it was so exempt. This ruling of the court is now complained of by the plaintiff in error, who was the plaintiff below.

The record shows that the defendant owned 760 acres of land in one body, including the claimed homestead, described as the south half of the northeast quarter and the north half of the southeast quarter of section 20, in township 5 south, range 24 west. At the time said judgment was rendered, the entire tract of land was occupied and used by the defendant as one farm, the dwelling-house and farm buildings being on the south half of the southeast quarter of section 17, in said township and range, where they had been

occupied by him continously from 1876 until about September 29, 1893. The improvements consisted of a substantial stone dwelling-house and other farm buildings, which Peak had constructed at a cost of about $2,000. There was no house on the land claimed as the homestead until about the 29th day of September, 1893, when a rude shed was constructed on the same, without doors or windows, openings being left therefor, in which he lived for a short time thereafter. During the following winter, and until about May 1, 1894, the family occupied the stone dwelling-house on section 17. At the date last named, a frame house, 14 by 16 feet, was moved onto the land in section 20, and was occupied by the defendant and his family on May 15, 1894, at the time of the hearing of the motion to set aside the sale. The land claimed as a homestead was acquired by the defendant under the pre-emption act of congress, final proof therefor being made in 1876, to which time he resided thereon. In 1876 the defendant made a homestead entry on the north half of the northeast quarter of said section 20 and the south half of the southeast quarter of section 17, and established his residence thereon in a house on the last-named section.

The only matter urged for our consideration is whether the land in question was the homestead of the defendant at the time the judgment was rendered. The language of the constitution, as well as of the statute, is :

"A homestead to the extent of 160 acres of farming land, . . . occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that re-lation exists."

Under these provisions, occupancy as a residence, either actual or constructive, is essential to give the homestead character to any tract of land. The test in every case is use. As the courts view with favor a claim of this kind, it is held, by a liberal construction of the statute, that actual occupancy as a residence is not essential to entitle one to the exemption, when his relations to the land are such as show his present intention to make such use of the land within a reasonable time. It is not sufficient, however, that there be a mere intention so to occupy it at an indefinite time in the future or contingent upon the happening of some uncertain event. If a residence has not been established by actual occupancy, the acts of a party must confirm his declared intentions, and both acts and declarations must be verified by subsequent actual residence. (*Edwards v. Fry*, 9 Kan. 417 ; *Ingels v. Ingels*, 50 id. 755.) The homestead character must also have attached to the land prior to the time when the lien of a judgment would have attached thereto had it not been so exempted. If it was not the homestead at the time the judgment was rendered the lien attached, and was unaffected by the subsequent acts of the owner in establishing his residence thereon. (*Bullene v. Hiatt*, 12 Kan. 98 ; *Ashton v. Ingle*, 20 id. 670.) The land claimed as a homestead must also be a single tract or be composed of contiguous pieces of land. (*Randal v. Elder*, 12 Kan. 257 ; *Linn Co. Bank v. Hopkins*, 47 id. 580.) It necessarily follows that in every case where there is actual residence the location of the dwelling-house of the owner is a matter of prime importance. The building intended for and occupied as a residence is inseparable from the homestead ; and when the selection is made out of a larger body of land than is exempt it must begin with the

dwelling-house and the land immediately occupied by it and extend to other lands contiguous thereto. The dwelling-house cannot be excluded for the purpose of increasing the quantity of land to be exempted elsewhere. (*Sarahas v. Fenlon*, 5 Kan. 592; *Ashton v. Ingle*, 20 id. 670; *Swenson v. Kiehl*, 21 id. 533; *Bebb v. Crowe*, 39 id. 342; *Linn Co. Bank v. Hopkins*, 47 id. 580; *Schoffen v. Landauer*, 60 Wis. 334.)

Such selection must also be made in a reasonable manner; and regard should ordinarily be had for recognized subdivisions of sections, so that the value of the remaining lands be not unreasonably affected. (*Railroad Co. v. Winters*, 44 Tex. 611; *Todd v. Gordy*, 28 La. Ann. 666.)

Under none of the rules applicable to such cases do we think the defendant has shown himself entitled to claim as his homestead, the 160 acres of land which he attempted to select in this case. His dwelling-house and actual residence, for years, had been established on section 17, with the north half of the northeast quarter of section 20 intervening between that and the claimed homestead. It is true he testified to an indefinite intention on his part, entertained for several years, to select this tract as his homestead and to make his residence thereon, provided he found that, by reason of his indebtedness, he was unable to save more than 160 acres. But during the same period he offered to sell this particular tract, and only failed to do so because of a disagreement as to the terms of sale. At the time of the judgment, and for a year thereafter, no move of any kind was made looking to the occupancy of this tract as a residence. On the contrary, his acts all indicated that he had no present and immediate intention to abandon his residence on section 17; and he, in fact, did not conclude

to do so until he was advised thereto by his attorney. The change of residence was then suggested, not as a voluntary choice, nor as the carrying out of a previ-ously-formed intention, but he "moved on it to save it as a homestead." He also said, in testifying, that he had intended always to live in the stone house on the adjoining section if he could get enough money to pay off the mortgage; that "I expected to save some property to shelter me, but if I had to come down to one piece of land, I always intended to hold that piece of land in 20."

It is clear that he cannot claim the land to be ex-empt as a homestead by virtue of his residence on section 17, although both are included within the same body of land; and there was no actual residence there-on at the time the judgment was rendered or for a year thereafter which could confer such right. Nor was there such a constructive occupancy as meets the requirements of the law. The defendant's right in possession to the one tract excluded all right to the other by mere intention or construction. Homestead claims cannot be double, nor should they be inconsis-tent. In this case, the acts of the defendant speak louder than his words, and must prevail as against any secret or even expressed intention with reference to his homestead. As said by Mr. Justice Brewer, in *Keith v. Stetter*, 25 Kan. 100, 104:

"A man's intentions are securely lodged in the re-cesses of his own heart, and he may safely assert that he intends one thing or another, providing neither is absolutely inconsistent with his acts, yet by reason of this secrecy of intention arises the familiar rule that men must be judged by their conduct rather than by their declarations."

We are of the opinion that the evidence shows clearly, and without substantial dispute, that the land

in question was subject to the lien of the plaintiff's judgment. The ruling of the court setting aside the sheriff's sale was therefore erroneous, and will be reversed.

The case will be remanded for further proceedings in accordance with this opinion.

All the Judges concurring.